UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20844-CR-GRAHAM/TORRES

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

TOM MAURICE JONES,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Tom Maurice Jones's ("Jones") Motion to Dismiss Indictment ("Motion"). [D.E. 22].  The Court has reviewed the Motion, the government's response in opposition, and Jones's reply.  The Court also heard argument of the parties on January 27, 2011, at which the parties argued whether a prima facie case had been established to convene an evidentiary hearing on the grounds for dismissal raised in the Motion.  On January 28, 2011, the Court issued a Report [D.E. 47] recommending that Jones's Motion be:1) denied on the existing record based upon the racial animus selective prosecution claim; and, 2) deferred ruling based upon selective prosecution in retaliation to Jones exercising his constitutional right to a jury trial in the state action.  Thereafter, on April 1, 2011, the Court held an evidentiary hearing regarding the subject of the deferred ruling.  For the following reasons, the remainder of Jones's Motion should also be **DENIED**.

## I.  BACKGROUND

### A.  *Jones's Criminal History*

Jones is currently twenty-nine years old.  He has eight prior felony convictions in the Eleventh Judicial Circuit of Miami Dade County, including: 1) October 20, 1999 convictions for Sale, Manufacture, or Delivery of Cocaine and for Possession with Intent to Sell, Manufacture, or Deliver Cocaine, both second degree felonies, in Case No. F99-31612; 2) February 4, 2004 convictions for Possession with Intent to Sell, Manufacture, or Deliver Cocaine, a second degree felony, and Possession with Intent to Sell, Manufacture or Deliver Cannabis, a third degree felony, in Case No. F04-000881; 3) a second February 4, 2004 conviction arising from a separate incident for Possession of Cocaine, a third degree felony, in Case No. F04-000881; 4) an August 25, 2005 conviction for Possession of Cocaine, a third degree felony, in Case No. F05-025146; 5) March 13, 2006 convictions for Possession with the Intent to Sell, Manufacture, or Deliver Cocaine Within 1000 feet of a School, and Possession with the Intent to Sell, Manufacture, or Deliver Cocaine Within 1000 feet of a Church, both first degree felonies, in Case No. F05-035001; 6) an August 28, 2007 conviction for Possession with the Intent to Sell, Manufacture, or Deliver Cocaine Within 1000 feet of a School, a first degree felony, in Case No. F06-042771; 7) October 2, 2008 convictions for Possession of Cocaine and Introduction or Possession of an Unlawful Article into a Detention Facility, both third degree felonies, in Case No. F08-033614; and, 8) a January 16, 2009 conviction for Possession with Intent to Sell, Manufacture, or Deliver Cocaine, a second degree felony, in Case No. F08-047028B.

### B. *December 19, 2009 Arrest*

Shortly after 4 a.m. on the morning of December 19, 2009, City of Miami Police Department officers were conducting a routine patrol in the area north of downtown Miami when they received a dispatch call regarding a black male acting suspiciously while looking into parked cars in the vicinity of Northeast 1st Avenue and Northeast 13th Street.

A City of Miami police officer responding to the call observed Jones riding his bicycle slowly alongside a line of parked cars while looking inside them. When the police officer attempted to make contact with Jones, he immediately fled on his bicycle. As other officers responded to the scene, he jumped off his bicycle and began fleeing on foot. The officers on the scene chased him toward a residence at 1315 Northeast Miami Court in Miami, Florida, where two officers observed Jones throw a loaded Bersa nine millimeter pistol under a nearby vehicle. He was then placed under arrest.

A criminal records check revealed that Jones had at least eight prior felony convictions in the State of Florida, including at least five convictions for either sale of cocaine or possession with the intent to distribute cocaine. An interstate nexus examination confirmed that the Bersa pistol and the twelve rounds of Luger ammunition it contained were manufactured outside the State of Florida.

### C. *Procedural History*

On December 19, 2009, Jones was charged in the Eleventh Judicial Circuit of Miami-Dade County with felony counts of Carrying a Concealed Firearm and Possession of a Firearm by a Convicted Felon, and misdemeanor counts of Resisting

an Officer without Violence and Loitering and Prowling in Case No. F09-040846. On January 20, 2010, the State Attorney for Miami-Dade County filed an information charging Jones with those violations. According to Jones, the State Attorney offered him a plea agreement wherein he would plead guilty to all charges and serve 39 months imprisonment. Jones rejected the offer.

Thereafter, for the next ten months, Jones actively litigated his case in state court, with his trial initially set for June 1, 2010; later continued twice by the state court. Subsequently, on November 4, 2010, Jones reaffirmed his intention to proceed to trial, then-set for the period beginning on November 15, 2010. With his state trial date set, the U.S. Attorney's Office charged Jones by complaint on November 12, 2010, with knowingly possessing a firearm and ammunition after having been convicted of a felony offense, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). A federal warrant was issued for his arrest.

Title 18, United States Code, Section 924(e) is the federal Armed Career Criminal Act. It provides, in relevant part, that:

> (1) In the case of a person who violates [18 U.S.C. § 922(g)(1)] and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e). "As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender – a violent criminal or drug trafficker – possesses a gun." *Begay v. United States*, 553 U.S. 137 (2008)

4

(citation omitted). "In order to determine which offenders fall into this category, the Act looks to past crimes...because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun." *Id.* Thus, there is no dispute that Jones, with five felony convictions for "serious drug offenses," falls under 18 U.S.C. § 924(e).

On November 19, 2010, a grand jury in the Southern District of Florida returned a one count indictment charging Jones with knowingly possessing a firearm and ammunition after having been convicted of a felony offense, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). [D.E. 3].

On January 4, 2011, Jones filed his Motion based on two selective prosecution theories: 1) racial animus; and, 2) Jones's decision to exercise his right to trial in a state action rather than accepting the state's plea bargain. Jones bolsters his latter theory by asserting the federal government took a coincidentally long amount of time, i.e., contemporaneous with his state court trial, to finally indict him.

After holding a hearing on January 27, 2011, we issued our recommendation to deny Jones's selective prosecution theory based on racial animus because "[t]he record does not support a prima facie showing required under *United States v. Smith*, 231 F.3d 800 (11th Cir. 2000)." [D.E. 47 at 2]. However, we recommended deferring final ruling on the second theory until holding an evidentiary hearing "given the prejudice to [Jones] in this record from the delay in filing of this action and the prima facie evidence that shows that the decision to pursue the federal action was not made until

5

[Jones] had thoroughly exercised his right to proceed to a jury trial in the state action." *Id.*[1]

After the government filed its objections to our Report, we held an evidentiary hearing on April 1, 2011 to determine what evidence, if any, Jones could proffer to support his theory. Upon consideration of the augmented record, we issue our recommendation on the remaining issue.

## II.  ANALYSIS

### A.  *Selective Prosecution Standard*

Under the Due Process Clause of the Fifth Amendment, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Smith*, 231 F.3d at 807. However, "[t]he reality resulting from limited law enforcement and judicial resources is that not every criminal violation of the United States Code can be prosecuted." *Id*. at 807. The decision as to which crimes and criminals are prosecuted is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced." *Id.,* citing U.S. Const. Art. II § 3. "A selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). The Attorney General and United States Attorneys "are designated by statute as the President's delegates to help him discharge his constitutional

---

[1] Thereafter, on February 9, 2011, a jury convicted Jones of the charge. [D.E. 70].

6

responsibility to 'take Care that the Laws be faithfully executed'" and, therefore, "'[t]he presumption of regularity supports' their prosecutorial decisions . . . ." *Id.* (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). Thus, "[i]n order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Id.* at 465. Hence, a defendant bears a "demanding" burden in establishing that he is being selectively prosecuted in an unconstitutional manner. *Id.*

Consistent with ordinary equal protection standards, to sustain this claim we require a showing "that the federal prosecutorial policy has a discriminatory effect and that it was motivated by a discriminatory purpose." *Smith*, 231 F.3d at 808 (quotations omitted).

The discriminatory effect prong of this test requires that "similarly situated individuals were not prosecuted." *Id.* at 809. As the Eleventh Circuit explains:

> [A] "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan – and against whom the evidence was as strong or stronger than that against the defendant.

*Id.* at 810.

The discriminatory purpose prong requires that "the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite

7

of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quotations and alteration omitted).

To the extent Jones incorporates an indictment delay argument into his latter selective prosecution claim, we analyze this under the due process framework also. *See United States v. Lovasco*, 431 U.S. 783, 795-96 (1977). To prove a pre-indictment delay violation, a defendant bears the burden to show: 1) actual prejudice to his defense from the delay; and, 2) that the delay resulted from a deliberate design by the government to gain a tactical advantage. *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995).

### B. *Jones Fails to Establish Prima Facie Case of Selective Prosecution*

#### 1. *Racial Animus*

To prevail on a claim of race-based selective prosecution, Jones must demonstrate both a discriminatory effect and discriminatory policy. *See Smith,* 231 F.3d at 808. As Jones correctly points out, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." [D.E. 22 at p.5 (citing *id.*)]. However, while acknowledging this requirement, Jones relies solely on simplistic state-court statistical data to support his claim, stating:

> Despite making up less than 20% of the Miami-Dade County population, and fewer than half of all convicted felons in the County, more than 91% of all those prosecuted federally for violations of § 922(g)(1) are black. Moreover, African-American defendants make up just 77% of those prosecuted in state court for the same crime.

8

*Id.* Thus, Jones asserts that these statistics, in and of themselves, support a showing that the government's enforcement policy for felon-in-possession prosecutions has a discriminatory effect. *Id.* at 2-3. Likewise, Jones submits that this statistical disparity equally establishes the government's discriminatory intent. [D.E. 22 at 3].

Courts have considered a comparison of the criminal histories of defendants to be *relevant* to the "similarly situated" inquiry. *See, e.g., United States v. Quinn*, 123 F.3d 1415, 1426 (11th Cir. 1997). However, the Eleventh Circuit has held, and recently reaffirmed, that "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." *U.S. v. Jordan*, No. 10-11534, 2011 WL 891075, at *5 (11th Cir. Mar. 16, 2011) (quoting *United States v. Bass*, 536 U.S. 862, 864 (2002) (mem.) (per curiam)). Thus, based on this binding Eleventh Circuit precedent, Jones's argument is unavailing. Indeed, he failed to present any evidence whatsoever relating to other similarly situated individuals. Accordingly, without more, Jones's Motion to Dismiss the Indictment based on selective prosecution arising from racial animus fails to support a prima facie showing required under *Smith*, 231 F.3d 800 (11th Cir. 2000). *See also Jordan*, 2011 WL 891075, at *5; *Bass*, 536 U.S. at 864.

### 2. <u>Retaliation for Exercising his Right to a Jury Trial</u>

As an initial showing, Jones's Motion again advances statistical data and indictment delay *anomalies* to support his claim. [D.E. 22 at 4]. Specifically, he notes these circumstantial facts:

> felon-in-possession cases are prosecuted with much greater frequency in state court than in federal court. While the

9

> Public Defender's office for Miami-Dade County handled 5,692 of these cases in the last year, the Miami Division of the Federal Public Defender's Office handled just 77 of these cases in a two-year period; [and,]
>
> ...
>
> [o]riginally charged in state court, Mr. Jones's case was litigated there for almost a year. He rejected a plea offer of 39 months at arraignment, and in every subsequent court appearance he indicated his desire to proceed to trial. Indeed, it was not until the eve of his trial period that the US Attorney obtained an indictment charging Mr. Jones with a violation of 18 U.S.C. § 922(g)(1).

*Id.* The gist of Jones's argument is that state court predominately tries felon-in-possession cases; Jones rejected a plea offer and exercised his constitutional right to a jury trial and the U.S. Attorney's office retaliated by charging Jones with a felony carrying a much higher mandatory sentence.[2] With this tenuous showing, we decided – in the interest of justice – to convene an evidentiary hearing on this issue. Specifically, we were concerned over the federal government's decision to indict well after Jones had throughly exercised his right to proceed to jury trial in the state court action.

As noted above, to establish a selective prosecution claim, a defendant must demonstrate through clear and convincing evidence that: 1) he has been singled out for prosecution *while others similarly situated who have committed the same acts have not been prosecuted*; and 2) the government's selective prosecution of him was the result of a constitutionally impermissible motive, such as on the basis of race or religion, or

---

[2] Indeed, Jones asserts that the U.S. Attorney chose to utilize a complaint – rather than indictment – as a charging document to secure an arrest warrant thus physically preventing Jones from proceeding to trial in state court.

10

in retaliation for the defendant's exercise of a constitutional right. *Smith*, 231 F.3d at 807-08 (citing *Armstrong*, 517 U.S. at 465).

However, during the evidentiary hearing, Jones offered nothing new to support his claim. Rather, he reargued his statistical data and timing delay to support his claim. Simply put, we find that, without additional support to build on those purported anomalies, Jones cannot sustain a claim for selective prosecution.

First, as noted above, raw statistical data regarding overall charges alone is insufficient to demonstrate different treatment among similarly situated individuals to establish a discriminatory effect. *See Bass*, 536 U.S. at 864 . Generally speaking, while the United States Attorney's Office may only prosecute a tiny fraction of the total number of felon-in-possession cases in Miami-Dade County, that data point alone does little to support Jones' larger conclusion that this discrepancy is the result of "his decision to exercise his constitutional right to trial in the state court proceedings." [D.E. 22 at 4]. Indeed, we fail to see the correlation.

Notably, Jones's conclusory assertion makes no indication of how many of the 5,692 defendants in state court are similarly situated to Jones (*i.e.* Armed Career Criminals or individuals with a comparable criminal history). Moreover, Jones makes no mention of what percentage of the defendants in state court, similarly situated or otherwise, decided to exercise their right to trial. Thus, without a factual proffer of defendants who are *actually* similarly situated to Jones but were nevertheless treated differently than Jones, he cannot establish the discriminatory effect prong. Accordingly, Jones's claim for selective prosecution, in this regard, fails.

Second, Jones asserts the government's indictment delay is indicative of selective or vindictive prosecution in retaliation for Jones exercising his right to a jury trial in state court. Without question, courts give deference to the government's decision to prosecute. *Armstrong*, 517 U.S. at 464. Thus, a defendant is faced with a "demanding" burden to overcome this deference. *Id*. Notwithstanding, the crux of Jones's argument is that the federal government moved to indict him only after he exercised his right to a jury trial, as demonstrated by the timing of his indictment. Hence, the delay itself is Jones's evidence.

In response, the government proffers direct testimony, by affidavit, of Jaime Morales, Special Agent, A.T.F., attesting that: 1) he was assigned this case on February 19, 2010; 2) he complected his investigation and then submitted his report on May 3, 2010; 3) from May through July 2010 he was on assignment out of state; 4) on July 30, 2010 he sustained an injury, underwent surgery on September 8, 2010 and remained out of office until October 18, 2010; 5) upon his return he checked the docket on Miami-Dade County Clerk of the Courts' website and learned of the upcoming state court trial and, while unaware of Jones's rejection of a plea offer, presented the case to the U.S. Attorney's Office; and, 6) on November 14, 2010 a complaint and arrest warrant were obtained. [D.E. 78-1]. Thus, Special Agent Morales's testimony explains the "anomaly" for the purported delay. Importantly, he also testifies and attests to having no knowledge whatsoever of the status of the state's plea offer or whether Jones rejected any plea deals. *Id*. at ¶6; *see also* [78-2, Special Agent, A.T.F., Matthew May's affidavit at ¶5].

During cross-examination, Jones elicited no testimony from Special Agent Morales effecting the veracity of his affidavit. Moreover, Jones failed to otherwise unearth testimony that the indictment delay resulted from anything but benign happenstance. As such, without any direct, conflicting evidence, we find the government's indictment was proper notwithstanding the delay – especially because the government was ignorant of the state court plea bargain. Indeed, to find otherwise, and thus impose an arbitrary deadline on when the U.S. Attorney's Office may indict a defendant pending trial in state court, would clearly step beyond the province of this Court's authority. *See United States v. Lovasco,* 431 U.S. 783, 790 (1977) ("the Due Process Clause does not permit courts to abort criminal prosecution simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining due process, to impose on law enforcement officials our personal and private notions of fairness and to disregard the limits that bind judges in their judicial function") (quotations and citation omitted). Ultimately, we find that Jones's minimal showing fails to present clear and convincing evidence to overcome the heightened burden necessary to support this claim.

Notwithstanding our finding that Jones cannot establish a selective prosecution claim, we note he incorporates a pre-indictment delay component to his argument. [D.E. 22 at p. 4]. As explained above, Jones presents evidence insufficient to corroborate such a claim. Indeed, Jones is only able to *speculate* to the *possibility* of prejudice caused by the delay without presenting a single example of actual prejudice. However, "to carry the heavy burden of proving actual prejudice from pre-indictment

13

delay, concrete proof is required; mere speculation and bare allegations will not suffice." *United States v. Campbell*, No. 1:04-CR-0424-RWS, 2005 WL 6436621, at *3 (N.D. Ga. Oct. 24, 2005) (quoting *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992); *see also United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984) (assertion that several prospective witnesses died, without more, fails to establish requisite prejudice); *United States v. McKoy*, 129 Fed. Appx. 815, 819 (4th Cir. 2005) (defendant must demonstrate prejudice with some degree of specificity). Here, without a showing of actual prejudice, Jones cannot carry his burden. Accordingly, we recommend that Defendants' Motion be **Denied**.

Finally, yet important to recognize, the government confirmed on the record during the April 1, 2011 evidentiary hearing that, pursuant to 18 U.S.C. § 3585(b), Jones's time served while pending his state court trial would count towards his federal sentence. The government further confirmed that since both the state and federal charge was, in effect, the same charge, i.e. felon in possession, that Jones will receive credit for the time he spent in state custody.

The parties shall have **three (3) days** from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 12th day of April, 2011.

                                  */s/ Edwin G. Torres*
                                  EDWIN G. TORRES
                                  United States Magistrate Judge